'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>     v.<br><br>RAYMOND SHRYOCK,<br><br>               Defendant. | CR 95-345-RSWL-16<br><br>**ORDER re: MOTION FOR COMPASSIONATE RELEASE**<br>[10504, 10509] |

Currently before the Court is Defendant Raymond Shyrock's ("Defendant") Motion for Compassionate Release or Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 (the "Motion").  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** the Motion.

## I.  BACKGROUND

On May 30, 1997, Defendant was convicted on a

variety of racketeering, conspiracy, drug trafficking, and other violent charges relating to his participation in or involvement with the Mexican Mafia (known also as "La Eme"). First Superseding Indictment, ECF No. 360; J. & Commitment, ECF No. 1827. The Court sentenced Defendant to life imprisonment. J. & Commitment. Defendant appealed the conviction and sentence, and the Ninth Circuit affirmed. <u>United States v. Shryock</u>, 342 F.3d 948, 991 (9th Cir. 2003). Defendant is currently serving his sentence at United States Penitentiary Canaan ("USP Canaan") in Waymart, Pennsylvania. Mot. for Compassionate Release ("Mot.") 4:3-4, ECF No. 10509.

On November 9, 2005, the Court denied [2159] Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Defendant filed the instant Motion [10509] on October 5, 2020.[1] The Government opposed [10514] the Motion on November 16, 2020, and Defendant filed a reply [10529] on December 14, 2020.

## II.   DISCUSSION

## A.   Legal Standard

The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, was enacted in 2018 and permits a defendant to directly petition the district court for a sentence

---

[1] Because the Court finds no discernible difference between Defendant's initial Motion for Compassionate Release filed on September 14 [10504], and the Motion for Compassionate Release filed on October 5 [10509], the Court refers to the later-filed Motion.

reduction under the compassionate release statute.  See 18 U.S.C. § 3582(c)(1).  18 U.S.C. § 3582(c)(1) establishes a three-step process for courts to evaluate a defendant's request for compassionate release.  A defendant must establish each of the three prongs by a preponderance of the evidence.  See United States v. Resnik, No. CR 16-201 PA, 2020 WL 6803250, at *2 (C.D. Cal. Oct. 13, 2020) (citing United States v. Sprague, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

First, a defendant must exhaust administrative remedies either by "exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or by waiting until thirty days have lapsed "from the receipt of such request by the warden of the defendant's facility" to reduce the term of imprisonment.  18 U.S.C. § 3582(c)(1).  Second, the district court evaluates whether "extraordinary and compelling reasons warrant such a reduction" and whether such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission."  Id.  Third, the court considers the sentencing factors outlined in "section 3553(a) to the extent that they are applicable."  Id.

**B.  Discussion**

1.  Exhaustion of Administrative Remedies

The Government does not dispute that Defendant has exhausted his administrative obligations under 18 U.S.C. § 3582(c).  See Gov't Resp. to Def.'s Mot. to Reduce

Sentence 10:3 n.4 ("Resp."), ECF No. 10514.  Warden Eric Bradley denied Defendant's release request on April 23, 2020, and this Motion was filed on Sept. 14, 2020.  See, Mot., Ex. 3.  Defendant has therefore satisfied his obligation to exhaust administrative remedies.  See 18 U.S.C. § 3582(c)(1)(A) (permitting a court to modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden").

    2.  <u>18 U.S.C. § 3582(c)</u>

        a.  <u>Extraordinary and Compelling Reasons</u>

According to the Sentencing Commission's policy statement,[2] "extraordinary and compelling reasons" warranting compassionate release may include a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons."

---

[2] Courts are split as to whether the Sentencing Commission's policy statement is applicable.  See United States v. Jones, No. 94-cr-20079-EJD-1, 2020 WL 5359636, at *5 (N.D. Cal. Aug. 27, 2020) (discussing that some courts have found the policy statement outdated, while others have found its terms to be binding).  The Court need not, however, determine whether it is bound by the policy statement at this juncture.  Even if the Court were permitted to consider circumstances beyond those detailed in the policy statement, the Court does not find extraordinary and compelling reasons here beyond those delineated in the policy statement.  Moreover, Defendant's Motion fails for the independent reason that, as discussed below, release would be inconsistent with the Section 3553(a) factors.

<u>United States v. Habash</u>, No. 1:15-cr-00286-DAD-BAM, 2020
WL 6381586, at *4 (E.D. Cal. Oct. 30, 2020) (quoting
U.S.S.G. § 1B1.13, cmt n.1 (A)-(D)).  A defendant
seeking compassionate release based on a medical
condition must show that he suffers from a serious
condition or impairment "that substantially diminishes
the ability of the defendant to provide self-care within
the environment of a correctional facility and from
which he or she is not expected to recover."  U.S.S.G. §
1B1.13 cmt n.1 (A).

Several courts have held that defendants' medical
conditions warrant compassionate release in light of the
COVID-19 pandemic.  <u>See, e.g.</u>, <u>United States v.
Rodriguez</u>, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020)
(granting a motion for compassionate release based on
the defendant's underlying health conditions, the COVID-
19 pandemic, and the defendant's temporal proximity to
his release date); <u>United States v. Aburto</u>, No. 18-cr-
1975-GPC, 2020 WL 6802184, at *5 (S.D. Cal. Aug. 25,
2020) (granting the defendant's motion for compassionate
release "[i]n light of the heightened medical risk the
COVID-19 pandemic poses to [defendant] in particular").
But release must be based on a defendant's particular
susceptibility to COVID-19, not the generalized risks
associated with the pandemic.  <u>See</u> <u>Resnik</u>, 2020 WL
6803250, at *3 (noting that "general concern [about
possible exposure to COVID-19] is shared by the public
at large, as well as all incarcerated individuals"); <u>see</u>

1 | also <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir.
2 | 2020) ("[T]he possibility that [COVID-19] may spread to
3 | a particular prison alone cannot independently justify
4 | compassionate release . . . ."); <u>United States v.</u>
5 | <u>Eberhart</u>, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020)
6 | (stating that "[g]eneral concerns about possible
7 | exposure to COVID-19 do not meet the criteria for
8 | extraordinary and compelling reasons").

9 | Here, Defendant argues that he is especially
10 | vulnerable to COVID-19 based on his age and his medical
11 | conditions, which include hyperlipidemia, hypertension,
12 | arrhythmia, cardiac dysrhythmias, hepatitis C, and
13 | gastroesophageal reflux disease.  Mot. 3:26-4:4, 12:13-
14 | 14.  The Centers for Disease Control and Prevention (the
15 | "CDC") has not identified any of those conditions, other
16 | than hypertension, as potential risk factors for COVID-
17 | 19.  <u>See People With Certain Medical Conditions</u>, CDC,
18 | https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
19 | precautions/people-with-medical-conditions.html (Dec.
20 | 28, 2020).  In addition, Defendant fails to show that
21 | his hypertension is a "serious condition" or that USP
22 | Canaan is "unable to monitor and adequately treat his
23 | medical condition[]."  <u>Habash</u>, 2020 WL 6381586, at *6
24 | (citing <u>United States v. Ayon-Nunez</u>, No. 1:16-cr-00130-
25 | DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020)).
26 | To the contrary, the medical records offered by the
27 | Government show that Defendant's hypertension is
28 | "benign."  Resp. Ex. 7, at 6; Resp. Ex. 8, at 3.

Furthermore, courts have not granted motions for compassionate release where hypertension is the only COVID-19 risk factor for the defendant.  Compare United States v. Johnson, No. CR19-55RSM, 2020 WL 4495981, at *3 (W.D. Wash. Aug. 4, 2020) (finding no extraordinary and compelling reasons where the defendant, who suffered from hypertension, had "no other high-risk medical conditions"), with United States v. Burrill, 445 F. Supp. 3d 22, 26 (N.D. Cal. 2020) (granting a motion for compassionate release where the defendant suffered from asthma, hypertension, and diabetes, all of which are considered risk factors for COVID-19), and Rodriguez, 451 F. Supp. 3d at 401 (granting a motion for compassionate release and noting the defendant's high risk for COVID-19 based on his liver abnormalities, obesity, and hypertension).

Defendant further contends that release is warranted because USP Canaan is unable to implement the hygienic and social distancing techniques promulgated by the CDC.  Mot. 15:15-20.  However, as of December 29, 2020, USP Canaan has fifteen total cases of COVID-19, including eleven inmates and four staff.  COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Dec. 29, 2020).  These numbers come in stark contrast to those of other facilities that were the subject of successful motions for compassionate release.  See, e.g., United States v. Arceo, No. 5:09-cr-00616-EJD-1, 2020 WL

4001339, at *2 (N.D. Cal. July 15, 2020) (granting a
motion for compassionate release for a defendant housed
in a facility with "almost a thousand confirmed
coronavirus cases"); United States v. Yellin, No. 3:15-
cr-3181-BTM-1, 2020 WL 3488738, at *3 (S.D. Cal. June
26, 2020) (granting the defendant's motion for
compassionate release where the prison facility had 681
confirmed coronavirus cases and ten deaths).  In fact,
USP Canaan has proved "relatively successful at
containing the spread of COVID-19 among its inmate
population." United States v. Nero, No. 13-CR-271-LTS,
2020 WL 6395458, at *3 (S.D.N.Y. Nov. 2, 2020).
Although Defendant is correct in noting that some
district courts have granted compassionate release to
individuals in facilities without COVID-19 outbreaks,
those cases concerned defendants with serious medical
conditions that made the defendants particularly
vulnerable to COVID-19. See, e.g., United States v.
Heffington, 2020 WL 4476485, at *6 (E.D. Cal. Aug. 4,
2020) (granting a motion for compassionate release where
the defendant "suffers from at least four . . . separate
medical conditions that, along with his advanced age,
place him at a substantially higher risk"); United
States v. Tate, No. 17-cr-30037, 2020 WL 3791467, at *4
(C.D. Ill. July 7, 2020) (granting a motion for
compassionate release for a defendant with "two
underlying medical conditions that place her at greater
risk and three conditions that may increase her risk of

1  serious illness or death from COVID-19"). As discussed

2  above, that is not the situation at bar.

3         b.   Danger to the Community

4      In addition, Section 1B1.13 of the U.S.S.G. permits

5  release only where "[t]he defendant is not a danger to

6  the safety of any other person or to the community."

7  Defendant contends that he is no longer a threat to

8  society based on his age and that, as a result, there is

9  not a compelling social advantage to keeping him in

10  prison. Mot. 14:6-8; Reply to Gov't Response 13:1-7,

11  ECF No. 10529. Regardless of Defendant's age, the

12  danger that he poses to the community is not necessarily

13  "that he will personally engage in acts of violence, but

14  that he can command others to do so." United States v.

15  Gotti, 433 F. Supp. 3d 613, 620 (S.D.N.Y. 2020). There

16  is also no evidence that Defendant has renounced his

17  association with La Eme. The Court cannot conclude that

18  Defendant is not a danger to the community.

19      3.   Section 3553(a) Factors

20      Even assuming that Defendant had established

21  extraordinary and compelling reasons justifying release

22  under Section 3582, release would be inconsistent with

23  the Section 3553(a) factors. Defendant was convicted

24  of, among other things, violent crimes to maintain or

25  increase his position in La Eme. This Court sentenced

26  him to life imprisonment, which the Ninth Circuit

27  affirmed. Shryock, 342 F.3d at 989-90. Given the

28  severity of Defendant's crimes and the Defendant's

sentence, release would undermine the need to "promote respect for the law," "to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a).

### III.   CONCLUSION

Defendant has failed to show extraordinary and compelling reasons warranting a sentence reduction.  He has also failed to show that a sentence reduction would be consistent with the Section 3553(a) factors.  For those reasons, the Court **DENIES** Defendant's Motion.

**IT IS SO ORDERED.**

DATED: December 30, 2020    _____/s/ Ronald S.W. Lew_____
                            **HONORABLE RONALD S.W. LEW**
                            Senior U.S. District Judge